COPY

DANIEL M. HORRIGAN

2010 JUL -2 PM 2:30

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| INFOCISION MANAGEMENT CORPORATION<br>325 Springside Drive<br>Akron, Ohio 44333<br><br>Plaintiff,<br><br>vs.<br><br>STRATEGIC FUNDRAISING, INC.<br>7591 Ninth Street, North<br>Oakdale, MN 55128<br><br>and<br><br>TIMOTHY BELOYED<br>15540 Ethan Ave., N.<br>Hugo, MN 55038<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.  2010 07 4644<br><br>JUDGE<br>ASSIGNED TO JUDGE TEODOSIO<br><br>**VERIFIED COMPLAINT**<br>(Temporary Restraining Order,<br>Preliminary and Permanent<br>Injunctive Relief and Damages for<br>Misappropriation of Trade Secrets,<br>Breach of Contract, Tortious<br>Interference with Contract/ Business<br>Relationships and Unfair<br>Competition) |

Plaintiff InfoCision Management Corporation ("InfoCision") for its Verified Complaint states:

**FIRST CAUSE OF ACTION**
(Misappropriation of Trade Secrets)

1. InfoCision is a Delaware corporation licensed and in good standing in the State of Ohio with its headquarters and principal place of business in Akron, Ohio. InfoCision is a nationally recognized leader in the field of fundraising through telemarketing for charitable and other non-profit organizations.

# EXHIBIT A

COPY

2. Defendant Strategic Fundraising, Inc. ("Strategic Fundraising") is a Minnesota corporation which competes directly against InfoCision in providing telemarketing fundraising services for charitable and non-profit organizations.

3. Strategic Fundraising is registered as a Professional Solicitor in the State of Ohio and routinely solicits donations from Ohio residents.

4. Defendant Timothy Beloyed was an Ohio resident who worked as an InfoCision employee from 2001 until September 2009.

5. In February 2008 Beloyed became an InfoCision Senior Account Executive primarily responsible for the creation, operation, costing and billing of InfoCision's fundraising programs for the National Republican Congressional Committee ("NRCC").

6. Beloyed worked on the NRCC account from February 2008 until his departure from InfoCision in September 2009.

7. As InfoCision's Senior Account Executive on the NRCC account, Beloyed became intimately familiar with InfoCision's trade secrets and confidential information regarding the details of InfoCision's professional and business relationship with this client, including information on creation and scripting of fundraising programs, client contacts, prospective donor identification, fulfillment strategies, donor history, costing, billing and program results.

8. Beloyed's utilization of InfoCision's trade secrets and confidential information on the NRCC account was governed by a Non-Disclosure Agreement (Exhibit "A" attached), which states in pertinent part:

> WHEREAS, Employee's position of responsibility with Employer will give him unlimited access to and familiarity with the confidential information and business methods of Employer,

COPY

including, but not limited to, its operating techniques, marketing programs, customer lists and customer relationships; and

WHEREAS, it would be contrary to Employer's interest if Employee were to enter into competition with Employer and/or disclose (otherwise than as permitted by this Agreement) any of the confidential information concerning the business of Employer, which Employee will acquire in his position of responsibility with Employer, or if Employee were otherwise to impair the good will of Employer....

\* \* \*

**4. Covenants of Employee:**

\* \* \*

(b) **Confidentiality and Nondisclosure** – Without the prior written consent of Employer, Employee will not, at any time (whether during or after the term of this Agreement) use for his/her benefit or purposes, or for the benefit or purposes of any other person, firm, partnership, association, corporation or business organization, entity or enterprise; or disclose (except in the performance of his/her duties hereunder), in any manner, to any person, firm, partnership, association, corporation or business organization, entity or enterprise, any trade secret, information, data, know-how or knowledge, including, but not limited to, trade secrets, billing information, client phone numbers and/or mailing lists, product data, know-how or knowledge relating to customers, sales, market development programs, supply sources, costs, equipment, processes, plans or employees) belonging to, or relating to the affairs of, Employer, unless any such information, data or knowledge becomes generally available to the public otherwise than by a breach of this Agreement by Employee.

(c) **Employment and Post-Employment Utilization of Confidential Materials and Other Employment.**

\* \* \*

2) For the duration of this Agreement, and for a period of two (2) years thereafter, employee agrees that he/she will not utilize any confidential information as described in Section 4(b) of this Agreement, if he/she becomes employed by an entity which is engaged in any business which competes with or is similar to that engaged in by Employer in any geographic area in which the Employer did or does conduct its business.

COPY

9. In March 2010, InfoCision discovered that Strategic Fundraising had hired Beloyed and not coincidentally given him responsibility for the handling of its own fundraising programs on behalf of the NRCC.

10. Beloyed's work on the NRCC account for Strategic Fundraising has entailed the inevitable disclosure, misappropriation and use of InfoCision's trade secrets and confidential information in direct competition with InfoCision

11. On April 1, 2010, InfoCision sent Strategic Fundraising a letter (Exhibit "B" attached) demanding that Strategic Fundraising transfer Beloyed from the NRCC account in order to prevent any further inevitable disclosure of InfoCision's trade secrets and confidential information.

12. Defendants have refused to have Beloyed stop working on the NRCC account and have continued to wrongfully, willfully, tortiously, and maliciously misappropriate InfoCision's trade secrets and confidential information for purposes of competing against InfoCision on the NRCC account in violation of the Non-Disclosure Agreement and the Ohio Uniform Trade Secrets Act, R.C. 1333.61, *et seq*.

13. The continued misappropriation of InfoCision's trade secrets and confidential information is causing InfoCision immediate and irreparable damage for which there is no adequate remedy at law.

14. InfoCision is entitled to a temporary restraining order and preliminary injunction prohibiting Beloyed from having any direct or indirect communication or contact with NRCC or any other InfoCision client for which Beloyed had access to InfoCision's trade secrets and confidential information while working for InfoCision and further prohibiting Beloyed from having any direct or indirect involvement in Strategic Fundraising's services to NRCC or any

other InfoCision client for which Beloyed had access to InfoCision's trade secrets and confidential information while working for InfoCision.

15. InfoCision is entitled to a permanent injunction prohibiting Strategic Fundraising and Beloyed from directly or indirectly providing any services to NRCC by reason of their prior misappropriation of InfoCision's trade secrets and confidential information.

16. InfoCision is entitled to an indeterminate amount of compensatory damages, statutory damages, punitive damages and attorney fees by reason of Defendants' prior misappropriation of InfoCision's trade secrets and confidential information.

## SECOND CAUSE OF ACTION
(Breach of Contract)

17. InfoCision incorporates its prior allegations.

18. Beloyed has breached the covenants set forth in Section 4 of his Non-Disclosure Agreement with InfoCision.

19. InfoCision has sustained damages in an indeterminate amount by reason of Beloyed's breach of the Non-Disclosure Agreement.

## THIRD CAUSE OF ACTION
(Tortious Interference with Contract)

20. InfoCision incorporates its prior allegations.

21. Strategic Fundraising tortiously induced Beloyed to breach his Non-Disclosure Agreement.

22. InfoCision has sustained damages in an indeterminate amount by reason of the foregoing tortious inference with the Non-Disclosure Agreement.

COPY

## FOURTH CAUSE OF ACTION
### (Tortious Interference with Business Relationship)

23. InfoCision incorporates its prior allegations.

24. Strategic Fundraising and Beloyed have tortiously interfered with InfoCision's business relationship with the NRCC by misappropriating InfoCision's trade secrets and confidential information.

25. InfoCision has sustained damages in an indeterminate amount by reason of the foregoing tortious inference with InfoCision's business relationship.

## FIFTH CAUSE OF ACTION
### (Unfair Competition)

26. InfoCision incorporates its prior allegations.

27. Strategic Fundraising and Beloyed have engaged in unfair competition with InfoCision by misappropriating InfoCision's trade secrets and confidential information.

28. InfoCision has sustained damages in an indeterminate amount by reason of the foregoing unfair competition.

WHEREFORE, Plaintiff InfoCision Management Corporation demands the following:

(1) A temporary restraining order and preliminary injunction prohibiting Beloyed from directly or indirectly providing any services or having any contact with the National Republican Congressional Committee or any other InfoCision client for which Beloyed had access to InfoCision's trade secrets or confidential information while working for InfoCision;

(2) A temporary restraining order and preliminary injunction prohibiting Strategic Fundraising from utilizing Beloyed in any manner with respect to the National Republican Congressional Committee or any other

COPY

        InfoCision client for which Beloyed had access to InfoCision's trade secrets or confidential information while working for InfoCision;

(3)     A permanent injunction prohibiting Defendants from providing any services for the National Republican Congressional Committee or any other InfoCision client for which Beloyed had access to InfoCision's trade secrets or confidential information while working for InfoCision; and

(4)     Final judgment against Defendants jointly and severally for compensatory damages in excess of $25,000, statutory damages in excess of $25,000, punitive damages in excess of $25,000, attorney fees and costs.

*[signature]*

David P. Bertsch #0023517
BUCKINGHAM, DOOLITTLE & BURROUGHS, LLP
3800 Embassy Parkway, Suite 300
Akron, Ohio 44333
Phone: (330) 258-6426
Fax: (330) 252-5426
Email: dbertsch@bdblaw.com

Attorney for Plaintiff,
InfoCision Management Corporation

## VERIFICATION

I, Michael Shonk, Vice President of Marketing, InfoCision Management Corporation, having been duly sworn and deposed, state that the foregoing allegations are true to the best of my information, knowledge and belief.

                                                  Michael Shonk, Vice President of Marketing
                                                  InfoCision Management Corporation

STATE OF OHIO   )
                       ) ss.:
SUMMIT COUNTY  )

SWORN TO before me and subscribed in my presence this 1st day of July, 2010.

                                                  Notary Public

«AK3:1031539_v1»

                                       ELIZABETH A. COLEGROVE, Notary Public
                                             Residence-Summit County
                                             State Wide Jurisdiction, Ohio
                                             Commission Expires August 9, 2010

COPY

Non-Disclosure Agreement

Page 1

## AGREEMENT

THIS AGREEMENT made and entered into as of the 19th day of October, 2001 by and between INFOCISION MANAGEMENT CORPORATION (hereinafter referred to as "Employer") and Timothy Beloyed, an individual residing at, 1614 Addison Lane, Alpharetta, GA 30005 (hereinafter referred to as "Employee");

W I T N E S S E T H:

WHEREAS, Employee is to be hired by Employer on November 19, 2001 and

WHEREAS, Employee is to perform for Employer upon the terms and conditions hereinafter set forth, and will make other contributions of a valuable and unique nature to Employer; and

WHEREAS, Employee's position of responsibility with Employer will give him unlimited access to and familiarity with the confidential information and business methods of Employer, including, but not limited to, it's operating techniques, marketing programs, customer lists and customer relationships; and

WHEREAS, it would be contrary to Employer's interests if Employee were to enter into competition with Employer and/or disclose (otherwise than as permitted by this Agreement) and of the confidential information concerning the business of Employer, which Employee will acquire in his position of responsibility with Employer or if Employee were otherwise to impair the goodwill of


EXHIBIT A

Non-Disclosure Agreement

Page 2

Employer; and

WHEREAS, Employer desires to retain the services of Employee and Employee desires to perform said services for Employer under the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the premises and the covenants contained herein, the mutual sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Services

Employee's employment, hereunder, shall include such duties and responsibilities as the President of Employer or his designated nominee shall, from time to time, determine. Employee agrees that his/her time and best endeavors will be devoted solely to the business of Employer and that Employee will put forth his/her best skills and efforts in carrying out the duties and responsibilities which may be assigned to him/her in accordance with this Paragraph 1.

2. Compensation

(a) Employee shall be paid a salary for services rendered as an Employee, hereunder, at the rate of ($5833.33) per month, excluding bonuses, payable in accordance with Employer's then current payroll

COPY

Non-Disclosure Agreement

Page 3

schedule. Such compensation may be adjusted from time to time.

(b) During his/her employment with Employer, Employee shall participate in such benefit programs as may be in effect, from time to time, for similarly situated management employees of Employer.

(c) Employee will be entitled to reimbursement of all ordinary and necessary business expenses paid for by him/her, on behalf of Employer, during the period of his/her employment only, in accordance with Employer's policies concerning business expense reimbursement, which policies shall be furnished to the Employee by the Employer.

3. <u>Terms of Employment Agreement - Termination</u>

(a) This Agreement shall continue in effect from month to month, unless notice of termination of the employment relationship is given in writing by either party, hereto, to the other, not less than one (1) week prior to termination, unless Employer deems it advisable to terminate the relationship immediately.

(b) Employer and Employee agree that the employment relationship is "at will" with both parties retaining the right to terminate the relationship at any time, for any reason, in

COPY

Non-Disclosure Agreement

Page 4

accordance with this paragraph 3(a).

(c) It is expressly understood and agreed that termination of Employee's employment shall not deprive the parties, hereto, of any rights, nor release them from any obligations which, under the terms and provisions of this Agreement are to survive such termination.

4. **Covenants of Employee**

In consideration of the covenants of Employer set forth herein, Employee hereby covenants, represents and warrants as follows:

(a) Acknowledgement - Employee has read and understands the terms and provisions of this Section 4 and agrees that they are reasonable and necessary for the protection of the confidential information, legitimate business interests and goodwill of Employer. Employee acknowledges that Employer has agreed to enter into this Agreement, in part, in reliance on the representation and covenant of Employee that Employee will abide by, and be bound by such terms and provisions.

(b) Confidentiality and Nondisclosure - Without the prior written consent of Employer, Employee will not, at any time

COPY

Non-Disclosure Agreement

Page 5

(whether during or after the term of this Agreement), use for his/her benefit or purposes, or for the benefit or purposes of any other person, firm, partnership, association, corporation or business organization, entity or enterprise; or disclose (except in the performance of his/her duties hereunder), in any manner, to any person, firm, partnership, association, corporation or business organization, entity or enterprise, any trade secret, information, data, know-how or knowledge (including, but not limited to, trade secrets, billing information, client phone numbers and/or mailing lists, product data, know-how or knowledge relating to customers, sales, market development programs, supply sources, costs, equipment, processes, plans or employees) belonging to, or relating to the affairs of, Employer, unless any such information, data or knowledge becomes generally available to the public otherwise than by a breach of this Agreement by Employee.

(c) Employment and Post-Employment Utilization of Confidential Materials and Other Employment.

1] During Employee's employment, he will not, without the prior written consent of the Employer, directly or indirectly engage in or assist or have any active interest in (whether as a proprietor, partner, investor, stockholder, officer,

COPY

Non-Disclosure Agreement

Page 6

director, or any type of principal whatever) or enter the employment of, or act as an agent for, or advisor or consultant to, any person, firm, partnership, association, corporation, or business organization entity or enterprise which is or is about to become, directly or indirectly, engaged in any business which competes with or is similar to that engaged in by Employer in any geographic area in which the Employer did or does conduct his/her business. Furthermore, during said Employee's employment, he/she will not release any confidential information as described in Section 4(b) of this Agreement to any such competitor.

2] For the duration of this Agreement, and for a period of two (2) years thereafter, Employee agrees that he/she will not utilize any confidential information as described in Section 4(b) of this Agreement, if he/she becomes employed by an entity which is engaged in any business which competes with or is similar to that engaged in by Employer in any geographic area in which the Employer did or does conduct its business.

3] For the duration of this Agreement, and for a period of two (2) years thereafter, Employee agrees that he/she will not recruit, hire, entice, solicit or participate in the solicitation or recruitment for purposes of hiring any employee of the Employer to act as an employee, consultant, agent, or independent contractor of any business in which the Employee

COPY

Non-Disclosure Agreement

Page 7

participates or is employed by, either directly or indirectly.

5. <u>Governing Law</u>

This Agreement shall be construed in all respects in accordance with and shall be governed by the laws of the State of Ohio. It is the intent of the parties to the Agreement that its provisions shall, to the fullest extent permissible under the law, be enforced by the courts of the jurisdiction in which relief is sought, and that modification be permitted as may be necessary to conform to the applicable law in such court or jurisdiction. Employee hereby acknowledges and agrees that the remedy at law available to Employer for any breach of the Employee's obligations under the confidentiality and/or nondisclosure provisions of the Agreement would be inadequate and agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce said provisions without the necessity of proof of actual damage.

6. <u>Entire Agreement - Modification</u>

This Agreement sets forth the entire understanding of the parties concerning the subject matter, hereof, and supersedes all prior agreements relative to said subject matter. No terms or provisions, hereof, may be changed or terminated, in whole or in

COPY

Non-Disclosure Agreement

Page 8

part, except by a writing signed by the parties hereto. No waiver of any of the provisions of this Agreement or of any of the rights of a party hereto shall be effective or binding unless in writing and signed by the part claimed to have given such waiver.

7. <u>Invalidity of Terms</u>

It is mutually understood and agreed that all agreements and covenants contained herein are severable and that, if any of them, with the exception of Sections 1, 2 and 3 hereof, shall be held to be invalid by any court, this Agreement shall be interpreted as if such invalid agreements or covenants were not contained herein.

8. <u>Binding Effect - Assignment</u>

The provisions of this Agreement shall be binding on and inure to the benefit of Employee, his/her heirs at law, legatees, executors, administrators and other legal representatives, and shall be binding on and inure to the benefit of Employer, its subsidiaries and affiliates, and their respective successors and assigns. Neither Employer nor Employee may assign, pledge or encumber in any way all or any part of his/her or its interest in and under this agreement, without the prior written consent of the other.

Non-Disclosure Agreement

Page 9

9. <u>Counterparts</u>

This Agreement may be executed in duplicate, each copy of which shall be deemed an original, but both of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, Employee has executed this Agreement and Employer has caused this Agreement to be executed by its duly authorized representative as of the day and year first above written.

IN THE PRESENCE OF:

_____                    _____
                                                                Employee

                                             INFOCISION MANAGEMENT CORP.

Kimberly A Croft                             By: _____

                                             Its: Vice Pres

COPY



THE highest quality call center company in the world!®

April 1, 2010

Mr. Dan Rice, President
Strategic Fundraising
7591 9th Street North
St. Paul, MN 55128

Re: Employment of Tim Beloyed

Dear Mr. Rice:

Thank you for returning my call this past Friday. Unfortunately I was unavailable and was not able to discuss the issues with you. However, in your voice mail message you stated that Tim Beloyed was not in violation of any agreements with InfoCision and that all precautionary measures have been taken to avoid Mr. Beloyed from disclosing InfoCision trade secrets. Unfortunately, I do not agree with this approach.

Mr. Beloyed signed an agreement dated October 19, 2001. This Agreement stated that Mr. Beloyed would not without prior written consent of InfoCision disclose or use any confidential information for the benefit of any other entity other than InfoCision. As I understand, Mr. Beloyed will be working on the National Republican Congressional Committee ("NRCC") and possibly the College Republican National Committee ("CRNC") accounts which are the same accounts that he worked on while employed with InfoCision. He has knowledge of all aspects of the account including billing, scripts, appeals, training, etc. I'd be interested in understanding the steps you've taken to ensure InfoCision's confidentiality is being maintained as I don't believe it's possible for Mr. Beloyed to work on these accounts without using his knowledge of InfoCision's trade secrets.

InfoCision greatly respects Strategic and the work it does. I'm sure you understand the importance of protecting a company's proprietary information. In an attempt to resolve this amicably, I ask that you please remove Mr. Beloyed from the NRCC and CRNC accounts for a period of two years. Unfortunately if Mr. Beloyed is not removed from these accounts we'll have no other option other than to seek any and all legal remedies which has been strongly recommended by legal counsel.

Respectfully,

Carl A. Albright
President & CEO

325 Springside Drive, Akron, OH 44333 (330) 668-1400 FAX: (330) 668-1401
www.infocision.com

EXHIBIT B

COPY

**COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO**

INFOCISION MANAGEMENT CORPORATION
325 SPRINGSIDE DR.
AKRON, OH 44333

                Plaintiff     Case No.   CV-2010-07-4644 3

      vs                     **SUMMONS**

STRATEGIC FUNDRAISING, INC.
7591 NINTH ST., N.
OAKDALE, MN 55128

DATE JUL 13 2010 SUMMONS ISSUED WITH 2
COPIES OF comp
BY cer. MAIL

                Defendant

**To the following named defendants:**

STRATEGIC FUNDRAISING, INC.
7591 NINTH ST., N.
OAKDALE, MN 55128

You have been named defendant(s) in a complaint filed in Summit County Court Of Common Pleas, Summit County Court House, 205 S. High St., Akron, Ohio 44308, by :

INFOCISION MANAGEMENT CORPORATION
325 SPRINGSIDE DR.
AKRON, OH 44333

Plaintiff(s). A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:
    DAVID P.. BERTSCH,
    3800 EMBASSY PKWY.
    SUITE 300
    AKRON, OH 44333

You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint within twenty-eight days after service of this summons on you, exclusive of day of service. Your answer must be filed with the Court within three days after the service of a copy of the answer on the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record.

If you fail to appear and defend, judgment by default may be rendered against you for the relief demanded in the complaint.

                              **Daniel M. Horrigan**
                         Clerk, Court Of Common Pleas
                             Summit County, Ohio

July 13, 2010                    By: s/ M. Randles  Deputy Clerk



**COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO**

INFOCISION MANAGEMENT CORPORATION
325 SPRINGSIDE DR.
AKRON, OH 44333

                    Plaintiff          Case No.    CV-2010-07-4644

           vs                          **SUMMONS**

STRATEGIC FUNDRAISING, INC.
7591 NINTH ST., N.
OAKDALE, MN 55128


                    Defendant

To the following named defendants:

   BELOYED, TIMOTHY
   15540 ETHAN AVE., N.
   HUGO, MN 55038


You have been named defendant(s) in a complaint filed in Summit County Court Of Common Pleas, Summit County Court House, 205 S. High St., Akron, Ohio 44308, by :

   INFOCISION MANAGEMENT CORPORATION
   325 SPRINGSIDE DR.
   AKRON, OH 44333


Plaintiff(s). A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:
   DAVID P.. BERTSCH,
   3800 EMBASSY PKWY.
   SUITE 300
   AKRON, OH 44333

**You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint within twenty-eight days after service of this summons on you, exclusive of day of service. Your answer must be filed with the Court within three days after the service of a copy of the answer on the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record.**

If you fail to appear and defend, judgment by default may be rendered against you for the relief demanded in the complaint.

                    **Daniel M. Horrigan**
                    Clerk, Court Of Common Pleas
                    Summit County, Ohio

July 13, 2010                    By: s/ M. Randles  Deputy Clerk